IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 3:12-CR-107 |
| v. | ) | |
| | ) | (PHILLIPS / SHIRLEY) |
| MICHAEL R. WALLI, | ) | |
| MEGAN RICE, and | ) | |
| GREG BOERTJE-OBED | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case came before the Court on November 20, 2012, for a motion hearing on the Defendants' joint Motion to Dismiss Charges [Doc. 44].[1] Assistant United States Attorneys Jeffrey E. Theodore and Melissa M. Kirby appeared on behalf of the Government. Attorneys Christopher Scott Irwin and William P. Quigley represented Defendant Michael R. Walli. Attorney Francis L. Lloyd, Jr., represented Defendant Megan Rice. All three Defendants were also present. Defendant Greg Boertje-Obed represented himself with the aid of elbow counsel Assistant Federal Defender Bobby Hutson. The Court heard the arguments of the parties and took the motions under advisement.

---

[1]The Court also heard argument on the Defendants' discovery motions [Docs. 46 & 47] and Motion for a Bill of Particulars [Doc. 48] and Government's Motion to Preclude Defendants from Introducing Evidence in Support of Certain Justification Defenses [Doc. 45]. The Court will rule on these motions separately.

1

## I. POSITIONS OF THE PARTIES

According to their own brief [Doc. 49, p. 1], on July 28, 2012, Defendants Walli, Rice, and Boertje-Obed "passed through four fences in a several hour walk into the Oak Ridge Y-12 Nuclear facility."

> The three reached the Highly Enriched Uranium Materials Nuclear Facility. They splashed human blood on the building. They hammered on the wall. They stretched crime scene tape across the area. They spray painted words on the walls. . . . . They hung two banners . . . . When a guard arrived, they read aloud their statement and offered the guard bread and started singing[.] . . . . They were ultimately arrested and face this criminal prosecution.

[Doc. 49, p.7-9] The Defendants stand charged in a three-count Superseding Indictment [Doc. 55][2] with three felonies: Interfering with the national defense by destruction of the buildings and grounds of the Y-12 National Security Complex (Count One); destruction of a structure and other real and personal property within the Y-12 National Security Complex (Count Two); and injuring property of the United States with the resulting damages exceeding $1,000 (Count Three).

The Defendants argue [Docs. 44 and 49] that the charges against them must be dismissed because the production, processing, and storage of nuclear weapons is illegal under United States and international law. In this regard, the Defendants contend that the production and continuing threat of use of nuclear weapons (1) is a war crime under 18 U.S.C. §2441(c)(2) and (2) violates international law, which is expressly incorporated into United States law in the United States Constitution. The Defendants assert that their nonviolent actions to expose and disarm symbolically

---

[2]At the time they filed their motions and the Court conducted the hearing, the Defendants were charged [Doc. 2] with the two felonies now alleged in Counts Two and Three and a misdemeanor of trespassing on Y-12 property. The Court will apply the Defendants' arguments to the new charges.

2

nuclear weapons were legal, reasonable, and justified. Thus, they conclude that laws designed to protect property, such as the statutes charged in the instant case, cannot be applied in such a way that they abrogate the federal and international laws of war.

The Government responds [Doc. 51] that the operations at the Y-12 National Security Complex do not violate United States law or constitute war crimes. First, the Government argues that the Defendants have no standing to challenge the legality of the United States' nuclear weapons program in federal court because the propriety of nuclear weapons is a political and, therefore, non-justiciable question and because individual citizens cannot litigate generalized grievances such as this. Second, the Government contends that assuming that the operations at Y-12 include the production of nuclear weapons, such production would not violate 18 U.S.C. §2441 or international law on nuclear weapons, as the International Court of Justice has held. Finally, the Government argues that even if the operations at Y-12 violated international law, the Defendants' violations of wholly independent federal laws protecting government property are not justified.[3]

### III. ANALYSIS

The Defendants call upon the Court to dismiss the Superseding Indictment in this case

---

[3] As a corollary to this third argument, the Government asserts in a motion *in limine* [Doc. 45] that the Defendants should be precluded from presenting evidence that they acted out of necessity or with a good motive, that their actions were compelled by international law or the Nuremberg principles, that their actions are protected under the First Amendment, that nuclear weapons are immoral, or that their actions were mandated by their own moral, religious, or political beliefs. It maintains that the Defendants are not able to meet the elements of affirmative defenses such as justification and that this evidence would be irrelevant and confusing to the jury. Although these issues overlap somewhat with those raised by the Defendants' Motion to Dismiss Charges, the Court finds the questions of whether a defense requires dismissal of the charges or merely whether it can be presented to the jury require different analyses. Accordingly, the Court will address the Government's motion in a separate ruling.

because the production and continuing threat of use of nuclear weapons constitutes a war crime in violation of 18 U.S.C. §2441(c)(2), the production and continuing threat of use of nuclear weapons violates international law, and the instant charges prosecute the legal, reasonable, and justified actions of the Defendants. The Government responds that the Defendants have no standing to bring the instant challenges and that their arguments fail to constitute a basis for dismissal of the Superseding Indictment. The Court will examine each of these issues in turn.

The Court begins with the basic constitutional requirement that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury[.]" U.S. Const. amend. V. "[A] trial may be held in a serious federal criminal case only if a grand jury has first intervened" and issued an indictment or presentment. Russell v. United States, 369 U.S. 749, 760-61 (1962). Legally insufficient indictments implicate not only the right to a grand jury's determination of probable cause to believe that the offense occurred but also the Fifth Amendment's guarantee of due process of law and protection against being twice placed in jeopardy for the same offense. Hamling v. United States, 418 U.S. 87, 177 (1974); Russell, 369 U.S. at 761. Also relevant is the Sixth Amendment's provision that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and the cause of the accusations[.]" U.S. Const. amend. VI; Russell, 369 U.S. at 761.

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling, 418 U.S.

4

at 117; United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting Hamling). An indictment may allege the charges using the words of the statute itself as long as it gives all the elements of the offense "'fully, directly, and expressly[.]'" Hamling, 418 U.S. at 117 (quoting United States v. Carll, 105 U.S. 611, 612 (1882)); Landham, 251 F.3d at 1079. Moreover, the statutory language "'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" Hamling, 418 U.S. at 117-18 (quoting United States v. Hess, 124 U.S. 483, 487(1888)); Landham, 251 F.3d at 1079. The Court examines the sufficiency of the instant Superseding Indictment in the context of these fundamental rights and requirements.

### A. Propriety of Requested Dismissal

Basically, it strikes the Court that the Defendants seek the dismissal of the instant Superseding Indictment because they contend that some other group or entity–either those operating Y-12 or perhaps the United States government–is committing a separate and distinct crime, which they describe as the production, storage, or threatened use of nuclear weapons. While such a contention may provide an explanation or even rise to the level of a type of justification defense at trial (an issue that the Court will explore in a separate order) for why the Defendants took the actions they are alleged to have committed, the Court finds that it is not a basis to dismiss an indictment that is properly issued and legally sufficient. The Government argues that even if dismissal is an available remedy, the Defendants are not eligible or lack standing to bring the instant challenge to the Superseding Indictment because the propriety of the United States' policy on nuclear weapons is a non-justiciable question and because individual citizens cannot litigate generalized grievances

5

such as this.

*(1) Can a Justification Theory Form the Basis for Dismissal of an Indictment?*

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). The Federal Rules of Criminal Procedure expressly permit criminal litigants to bring "a motion alleging a defect in the indictment" before trial. Fed. R. Crim. P. 12(b)(3)(B). However, in the instant case, the Court does not find the Defendants to be arguing that the instant charges fail to state the elements of the crimes charged or that the facts alleged fail to show a violation of the charged statutes as a matter of law, nor do the Defendants point to any procedural flaws with the bringing of these charges. Instead, the Defendants argue that the charged statutes designed to protect property[4] should not be applied to them because they believe that the federal government is committing a war crime at Y-12 by producing, storing, and threatening to use nuclear weapons. They argue that their actions in entering onto and damaging Y-12 property were justified (and even compelled) in response to the operations at Y-12. Thus, they conclude that the instant charges must be dismissed because they can raise this justification defense.

The Supreme Court has determined the issue of whether a defendant was possibly compelled to take certain illegal action out of duress to be an "evidentiary question[]" that cannot be decided on a motion to dismiss the indictment. United States v. Knox, 396 U.S. 77, 83 & n.7 (1969). Defendant Knox, who ran a betting business, was charged with four counts of failing to file

---

[4]The Defendants advanced this argument prior to the addition of the new Count One, which charges them with interfering with the national defense by injuring the buildings and grounds of Y-12.

6

certain tax forms and two counts of making false statements to a federal agency for filing forms that falsely stated the number of persons he employed to accept wagers. Id. at 78. The district court dismissed counts one through four, holding that Supreme Court precedent had invalidated the part of the wagering tax laws that required filing the special return. Id. The district court also dismissed counts five and six, concluding that the Defendant could not be prosecuted for providing false information on the forms because his Fifth Amendment privilege against self-incrimination would have shielded him from prosecution for failing to fill out the forms at all. Id. The government appealed the district court's ruling as to counts five and six. Id. at 78-79.

On appeal, Defendant Knox argued that if he had filed truthful, complete forms, as required by the federal tax laws, he would have incriminated himself under state gambling laws and that if he had failed to file the forms at all, he would have violated federal tax laws. Id. at 81. Knox argued that "[i]n choosing the third alternative, submission of a fraudulent form, he merely opted for the least of three evils, under a form of duress that allegedly makes his choice involuntary for purposes of the Fifth Amendment." Id. The Supreme Court held the Fifth Amendment privilege does not provide a defense to Knox's provision of false information: Although the defendant no doubt felt "an element of pressure" from federal tax laws that required him to file a special return and required it to be both truthful and complete, the defendant's "respond[ing] to the pressure . . . by communicating false information . . . was simply not testimonial compulsion." Id. at 82.

> Knox's ground for complaint is not that his false information inculpated him for a prior or subsequent criminal act; rather, it is that under the compulsion of [the federal tax laws] he committed a criminal act, that of giving false information to the Government. If the compulsion was unlawful under [prior precedent], Knox may have a defense to this prosecution under the traditional doctrine that a person is not criminally responsible for an act committed under

7

duress.

Id. at 82-83.  However, citing to Federal Rule of Criminal Procedure 12(b)(1), the Court concluded that "the question [of] whether Knox's predicament contains the seeds of a 'duress' defense, or perhaps whether his false statement was not made 'willfully' as required by [the statute prohibiting false statements to a federal agency], is one that must be determined initially at his trial[,]" rather than by a motion to dismiss the indictment.  Id. at 83 & n.7.

In the same way, even if the defenses raised by the Defendants would be available to the Defendants at trial (the challenge to which is the heart of the Government's motion to preclude certain defenses, which the Court will address by separate order, see footnotes 1 and 3), these defenses do not constitute a basis for the pretrial dismissal of the Superseding Indictment as a matter of law.  Accordingly, the Court recommends that the Defendants' Motion to Dismiss Charges [Doc. 44] be denied.

The undersigned finds that the remainder of the parties' arguments both for and against dismissal of the Superseding Indictment are simply irrelevant, because dismissal of the charges is not an available remedy as just explained.  Nevertheless, the Court will address the parties' additional arguments as briefly as possible in order to assist the District Court in determining the issues.

*(2) Standing*

The Government argues that Defendants lack standing to make the claim that production, storage, and threatened use of nuclear weapons constitutes a war crime because the propriety of the United States' policy on nuclear weapons is a non-justiciable question and because

8

individual citizens cannot litigate generalized political or policy-type grievances such as this, particularly in a criminal proceeding. The Court agrees on both fronts.

The issue of whether United States' possession, production, and policy regarding nuclear weapons violates international law or specific treaties to which the United States is a party is not one that the Defendants can litigate in this Court. While declaring that treaties are part of the "Supreme Law of the Land," the United States Constitution also and specifically entrusts to Congress the "Power To . . . provide for the common Defense[.]" U.S. Const., art. I, § 8, cl. 1. Questions implicating national defense policy are "political and governmental questions which are confided by the Constitution to the legislative and executive branches of the government" and are not within the jurisdiction of the courts. Farmer v. Rountree, 252 F.2d 490, 491 (6th Cir.), cert. denied 357 U.S. 906 (1958). Although the Court will decide constitutional issues as and when such issues are properly before it, "the Constitution itself requires . . . deference to congressional choice" in matters of military needs and operations. Rostker v. Goldberg, 453 U.S. 57, 67-68 (1981).

In Farmer, a taxpayer brought suit for a declaratory judgment that he was immune from paying income taxes for year 1949, contending that "the military and foreign policies of the United States, since World War II, including the prosecution of the Korean War, were designed and carried out in violation of international law, and were, therefore, illegal and void; and that he had the right to refuse payment of two-thirds of his income tax for the reason that the said revenue had been illegally appropriated by Congress for such illegal purposes[.]" Farmer, 252 F.2d at 491. The appellate court affirmed the conclusion of the trial court that the taxpayer's

> claim involved the resolution of political questions, and that courts had no right or authority to resolve such questions; that, under the Constitution of the United States, Congress is vested with the

9

> exclusive right to levy taxes and to appropriate public revenue for the
> common defense and general welfare of the country, and to provide
> for, and maintain the Army and Navy; and that it has the exclusive
> authority to determine the requirements of national defense and the
> amount of tax revenue to be used for defense or military purposes.

Id. Similarly, the instant Defendants argue that the United States' production, storage, and maintenance of nuclear weapons violates international law.[5] The Court finds this issue to be a non-justiciable political question.

Second, the Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government–claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large–does not state an Article III case or controversy." Lujan v. Defenders of Wildlife, 504 U.S. 555, 576 (1992).

> "The province of the court," as Chief Justice Marshall said in
> Marbury v. Madison, 5 U.S. (1 Cranch) 137, 170 . . . (1803), "is,
> solely, to decide on the rights of individuals." Vindicating the public
> interest (including the public interest in Government observance of
> the Constitution and laws) is the function of Congress and the Chief
> Executive.

Id. at 577. Accordingly, "[t]he injury must be 'distinct and palpable, and not abstract or conjectural,' so as to avoid 'generalized grievances more appropriately addressed in the representative branches' and the electoral process." American Civil Lib. Union v. National Sec. Agency, 493 F.3d 644, 675 (6th Cir. 2007) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). In the instant case, the

---

[5]Whether the production, storage, and maintenance of nuclear weapons is a war crime as defined in 18 U.S.C. §2441(c) is a legal question, which the judiciary branch may reach, if such matter is properly before it. Although the Court finds that the Defendants lack standing to bring a general challenge to the United States' nuclear policy or the operations at Y-12, the Court briefly analyzes this substantive question of whether the production, storage, and maintenance of nuclear weapons is a war crime as defined in 18 U.S.C. §2441(c) in part B below.

10

Defendants describe nuclear weapons as constituting a threat of harm to all persons indiscriminately:

> Nuclear weapons cannot discriminate between civilians and military. They produce a huge firestorm, uncontrollable radiation, massive heat and a blast capable of leveling everything within miles. Outside of the blast zone there are neutron and gamma rays intended to kill or wound every single living thing thus causing widespread death and severe long term human and environmental damage.

[Doc. 49, p.2] The Court finds this to be the type of generalized grievance of which the above quoted case law speaks. Accordingly, the Court questions whether the Defendants can properly litigate such a generalized grievance through the back door of the courthouse as a challenge to the instant criminal charges, when they could not do so through the front door by bringing a federal law suit against the government or Y-12 for the production, storage, and maintenance of nuclear weapons.

The Court finds that the instant Defendants have no standing to bring a general challenge to the United States policy regarding nuclear weapons or the operations at Y-12. This lack of standing forms a second basis for the Court's recommendation that the District Court deny the Defendants' Motion to Dismiss Charges [Doc. 44].

### B. Violation of Federal or International Law

The Defendants also argue that the instant charges must be dismissed because the production, processing, and storage of nuclear weapons at Y-12 is illegal under United States and international law. With regard to federal law, they contend that the continuing threat of use of nuclear weapons is a war crime as defined in 18 U.S.C. §2441. They also maintain that the International Court of Justice (ICJ) has concluded that the threat of use of nuclear weapons violates

11

international law.

*(1) 18 U.S.C. §2441*

Section 2441 of Title 18 makes it a crime for a member of the United States armed forces or a United States national to commit a war crime either inside or outside of the United States. The statute defines war crimes as "any conduct"

> (1) defined as a grave breach in any of the international conventions signed at Geneva 12 August 1949, or any protocol to such convention to which the United States is a party;
>
> (2) prohibited by Article 23, 25, 27, or 28 of the Annex to the Hague Convention IV, Respecting the Laws and Customs of War on Land, signed 18 October 1907;
>
> (3) which constitutes a grave breach of common Article 3 (as defined in subsection (d)) when committed in the context of and in association with an armed conflict not of an international character; or
>
> (4) of a person who, in relation to an armed conflict and contrary to the provisions of the Protocol on Prohibitions or Restrictions on the Use of Mines, Booby-Traps and Other Devices as amended at Geneva on 3 May 1996 (Protocol II as amended on 3 May 1996), when the United States is a party to such Protocol, willfully kills or causes serious injury to civilians.

18 U.S.C. §2441(c).

The Defendants contend that *use* of and continuing *threat of use* of nuclear weapons is a war crime under subsections (c)(1)[6] and (2)[7] because the effects of the detonation of a nuclear

---

[6] The Defendants argue that Article 3(1)(a) of the Geneva Convention prohibits the following as to non-combatants: "violence to life and person, in particular murder of all kinds, mutilation, cruel treatment and torture . . . ." The Defendants contend that because the detonation of a nuclear weapon would kill both civilians and military persons at the target site, the *use* of nuclear weapons violates this provision of the Geneva Convention and, thus, is a war

12

weapon cannot be restricted to a military target. Assuming for the sake of argument that the employees at Y-12 are United States nationals and that, as asserted by the Defendants, Y-12 is engaged in the production of the components of and refurbishing of nuclear weapons, the Court is still being asked to take an insurmountable logical leap to find that the workers at Y-12 are *using* or even threatening the use of nuclear weapons.[8] In oral argument, the Defendants acknowledged that there is no precedent holding that the possession of nuclear weapons constitutes a war crime under §2441. The Court finds that §2441 is inapposite to the question of whether the Defendants' actions

---

crime under §2441(c)(1).

[7]The Defendants contend that Article 23(e) of the Hague Convention, specifically mentioned in §2441(c)(2), prohibits "employ[ing] arms, projectiles, or material calculated to cause unnecessary suffering . . . ." The Defendants argue that "the *use* of nuclear weapons, which would cause unnecessary suffering[ and] would kill and maim tens of thousands of individuals . . ., would be a war crime under the Hague Convention." [Doc. 49, p.11, emphasis added]

[8]The Defendants refer the Court to the Declaration of Francis F. Boyle, law professor at the University of Illinois, which they have filed as an exhibit [Doc. 44, Exh. 1] to their motion. Professor Boyle opines that "inchoate crimes . . . such as the planning or preparation and conspiracy to commit a crime against peace, a crime against humanity or a war crime" are also prohibited by international law. First, the Court finds that an expert may not testify as to what constitutes the law, its meaning, or its interpretation, but is restricted to testimony that "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); see also United States v. Urfer, 287 F.3d 663, 664 (7th Cir. 2002) (holding that "questions of law are for the judge, not the jury, to decide . . . includ[ing] questions of international law"). Moreover, even if the Court were to consider Professor Boyle's opinion on this matter, the Court declines to find that the production or refurbishing of nuclear weapons by the workers at Y-12 is tantamount to the use of nuclear weapons by the United States. Instead, the possession of nuclear weapons in order to deter other countries from using nuclear weapons against the United States is not the equivalent of "planning or preparation . . . to commit a crime against peace." When weapons are possessed to deter others, the precise intent is not to use them. The Court considers the situation to be analogous to the junkyard owner who posts a sign saying "mean dog" inside his junkyard. The purpose of the sign is not to threaten or commit violence. Instead, the junkyard owner posts the sign to deter acts on the part of others so that the dog will not have to bite.

13

at Y-12 were justified or should result in the dismissal of their charges. This statute just applies to the "use" of weapons that cannot discriminate between military and civilian targets and simply does not apply to the production, processing, and storage of nuclear weapons, which is what the Defendants have proffered occurs at Y-12.

*(2) International Law*

The Defendants also argue that the international laws of war and international humanitarian law declare the *use* of nuclear weapons to be a criminal act. [Doc. 49, p.3] They contend that this international law is binding on the United States and incorporated into United States law by the Constitution.

Setting aside the question of whether international law may be applied to the operations of Y-12, the Court finds that the Defendants have failed to show that the production or storage of nuclear weapons (or even a policy of maintaining nuclear weapons to deter others, which is what the Court infers the Defendants mean by "threatened use") violates international law. The Defendants rely upon the 1996 opinion of the International Court of Justice "Legality of the Threat or Use of Nuclear Weapons." The Court has reviewed this opinion in detail, see United States v. Timothy Joseph Mellon, et al, No. 3:02-CR-47, Order of June 14, 2002, and concludes that this opinion does not state that the threat of use of nuclear weapons or a policy of deterrence–much less the production, maintenance, or storage of nuclear weapons–violate international law.[9]

---

[9]Although the Court does not consider the Defendants' experts' opinions on the interpretation of law (see footnote 8 above), the Court finds Professor Boyle's suggestion that the ICJ opinion prohibits the production of nuclear weapons [Doc. 44, Exh. 1, p.7], to be frankly wrong and seemingly disingenuous.

14

The ICJ opinion, at paragraphs 15 and 18, first acknowledges that it is not making any law or settling any dispute but is, instead, offering an advisory opinion to the United Nations at the United Nations' request. Accordingly, the Court finds that the ICJ opinion does not constitute the rule of law, nor can the violation of this opinion constitute the violation of any law. Paragraph 39 of the ICJ's opinion observes that the United Nations has not expressly prohibited or permitted the use of any specific weapons, including nuclear weapons. Therefore, the ICJ states no express prohibition of nuclear weapons exists, to include any prohibition of possessing or manufacturing nuclear weapons. In paragraph 56, the ICJ finds that the use of nuclear weapons is not specifically prohibited by the Hague Convention. In paragraph 57, the ICJ discusses treaties prohibiting the use of weapons of mass destruction (ex. biological weapons and poisonous gas, etc.) and finds that these treaties do not prohibit recourse to nuclear weapons. Paragraph 62 of the ICJ's opinion discusses treaties covering the acquisition, manufacturing, possession, deployment, and testing of nuclear weapons and concludes that these treaties do not prohibit the manufacturing and possession of nuclear weapons.

After discussing other treaties along with international law and humanitarian law (paragraphs 63 and 95), the ICJ concludes that it cannot determine that even the use of nuclear weapons would conflict with the rules and principles of armed conflict in all circumstances. In an eleven to three decision, the ICJ held that neither customary nor conventional international law contains a universal prohibition to the use or threat of use of nuclear weapons. Accordingly, the undersigned finds that the opinion of the ICJ, which the Defendants acknowledge to be the most authoritative statement on the international law relating to nuclear weapons, does not consider the production, possession, or refurbishing of nuclear weapons to be a violation of international law.

During the oral argument on November 20, 2012, Defendant Boertje-Obed argued that under the Nuremberg principles, the planning and preparation for a war crime is a crime. The Court has already found that the production and refurbishing of nuclear weapons is neither preparing for a war crime nor a violation of international law. Moreover, the Nuremberg principle that one has a duty to violate a domestic law in order to comport with obligations under international or humanitarian law only applies to domestic laws requiring the *commission* of war crimes. United States v. Kabat, 797 F.2d 580, 590 (8th Cir. 1986) (rejecting defendant nuclear protestors' defense that their acts of damaging missile sites were privileged by the Nuremberg principles and international law). Here, the statutes that the Defendants are alleged to have violated did not require the Defendants to take any actions.

Additionally, the circumstance that a person is acting to further international law does not provide a defense to the violation of domestic laws. United States v. Allen, 760 F.2d 447, 453 (2d Cir. 1985). The Defendants "should not be excused from the criminal consequences of acts of civil disobedience simply because the acts were allegedly directed at international law violations." Id. This is particularly true in this case, when no domestic law required the Defendants to violate the international law they claim is at stake. The appellate court for the Seventh Circuit has also rejected the contention that anti-nuclear protestors' actions of destroying government property were somehow privileged by international law:

> Appellants cite no international law, and we are aware of none, even suggesting that an individual has the responsibility to correct a violation of international law by destroying government property. To the contrary, international law recognizes the sanctity of property, protecting a nation's property from destruction by another nation's agents, see N. Green, International Law: Law of Peace 206, 209 (2d ed. 1982), and offers other means to stop international law violations:

16

> "[i]nternational law presents nations with institutions, processes, and norms that permit respect to be manifested in relatively depoliticized atmospheres."

Id. Thus, the Court finds the Defendants' claims that they were acting in furtherance of international law provide no basis for the dismissal of the instant charges.

The Government argues that procedurally, the Defendants cannot even raise international law as a defense to these charges because Congress is not bound by international law when enacting domestic laws. The Defendants argue that both the Constitution and Supreme Court case law expressly incorporates international law into federal law. "[The United States] Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land[.]" U.S. Const., art. VI, cl. 2. Additionally, the Supreme Court stated in The Paquete Habana, "[i]nternational law is part of our law, and must be ascertained and administered by the courts of justice of appropriate jurisdiction as often as questions of right depending upon it are duly presented for their determination." 175 U.S. 677, 700 (1900) (determining whether fishing vessels were properly captured as prizes of war for violating a blockade of Cuba).

The Court has already found that the production, processing, and storage of nuclear weapons at Y-12 does not violate international law as expressed in the ICJ opinion upon which the Defendants rely. Nevertheless, even if the United States' nuclear policy violated international law, it does not follow that the Defendants cannot be prosecuted for damaging federal property. "'[I]n enacting statutes, Congress is not bound by international law. . . . If it chooses to do so, it may legislate [in a manner contrary to the limits posed by international law].'" Allen, 760 F.2d at 453

17

(quoting United States v. Pinto-Mejia, 720 F.2d 248, 259 (2d Cir. 1983), modified on other grounds, 728 F.2d 142 (2d Cir. 1984)). Thus, the Court of Appeals for the Second Circuit held that nuclear protestors could be prosecuted for the destruction of government property, despite their contention that their purpose was to enforce treaties to which the United States is a party and to uphold international law. Id. Likewise, this Court finds that the Defendants may be prosecuted for interference with national security and destruction of government property irrespective of whether the United States' possession, manufacture, and policy regarding nuclear weapons violates international law.

### C. The Rule of Law

Finally, the Defendants argue that there is no legal use for nuclear weapons and, thus, their actions which form the basis of the instant charges were legal, reasonable, and justified. They contend that laws designed to protect federal property cannot be applied in such a way that they abrogate the federal and international laws of war. They insist that the property damaged in this case was protecting illegal nuclear weapons and that the nonviolent and symbolic disarming of these weapons was reasonable and justified. These arguments, in essence, ask the Court to exempt them from the rule of law and to find the statutes, which they are charged with violating, do not apply to them because their cause is so worthy. Instead of jury nullification, the Defendants are seeking a type of judicial nullification.

This Court has already found that (1) the justification-type defenses advanced by the Defendants are not a basis for dismissing the Superseding Indictment; (2) the Defendants lack standing to challenge United States policy on nuclear weapons, particularly in a criminal case; (3)

the production, processing, and storage of nuclear weapons at Y-12 do not constitute a war crime as defined in 18 U.S.C. §2441(c); and (4) the production, processing, and storage of nuclear weapons does not violate international law as expressed by the International Court of Justice. The Court finds no legal basis for the dismissal of the Superseding Indictment and declines the Defendants' invitation to substitute its own judgment for that of the executive or legislative branches or even for that of a jury. The Defendants have urged this Court to administer justice in this case [Doc. 49, pp.19-20], and justice demands that no person, or court, be above the law. See Butz v. Economou, 438 U.S. 478, 506 (1978) (holding that "[o]ur system of jurisprudence rests on the assumption that all individuals, whatever their position in government, are subject to federal law"). The Defendants' Motion to Dismiss Charges [Doc. 44] should be denied.

## III. CONCLUSION

The Court has carefully considered the parties' briefs and arguments along with the applicable case law and finds no basis to dismiss the instant Superseding Indictment. Accordingly, the undersigned respectfully **RECOMMENDS** that the Defendants' Motion to Dismiss Charges [**Doc. 44**] be **DENIED**.[10]

                                              Respectfully submitted,

                                              s/ C. Clifford Shirley, Jr.
                                              United States Magistrate Judge

---

[10] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).