UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION
KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | Criminal No. 12-107-ART |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| MICHAEL R. WALLI, MEGAN RICE, and GREG BOERTJE-OBED, | ) ) ) | **AND ORDER** |
| Defendants. | ) ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Nuclear weapons have always been controversial. As this case demonstrates, they are likely to remain so. For better or worse, however, the political branches have decided that this country ought to retain a nuclear arsenal. Like most political judgments that touch on matters of conscience, reasonable people can disagree about the propriety of that decision. But such disagreement, even if inspired by deeply held moral views, must be constrained by a respect for the law.

## BACKGROUND

The defendants—Megan Rice, Michael Walli, and Greg Boertje-Obed—believe that the production, possession, and deployment of nuclear weapons violates international law and threatens the survival of the human race. To "begin the work of disarmament," as Rice later put it, R. 235-1 at 10, the defendants decided to stage a non-violent protest inside the Y-12 National Security Complex in Oak Ridge, Tennessee. Y-12 produces and stores enriched uranium and other nuclear weapons components. R. 192 at 44–45. Since access to the Complex is tightly restricted, however, they could not exactly walk in the

front door. To enter Y-12, the defendants cut through four security fences. *See id.* at 199. The fences displayed signs that forbade trespassing and declared trespassing to be a federal crime. *See id.* at 72–73; Trial Ex. 46. Once inside, the defendants walked through the Complex until they reached the Highly Enriched Uranium Materials Facility (HEUMF). R. 49 at 7. They then "splashed human blood on the building," "hammered on the wall," "stretched crime scene tape across the area," "spray painted words on the walls," and "hung two banners" that said "Transform Now Plowshares" and "Swords Into Plowshares Spears Into Pruning Hooks – Isaiah." *Id.* After a guard spotted them, they read him a statement explaining their position on nuclear weapons, offered him bread, and began to sing. *Id.* at 8. Extreme measures, some may say. But the defendants view their actions as a legitimate, even obligatory, response to the threat posed by nuclear weapons.

The United States charged the defendants with willful injury of a national defense premises with intent to harm the national defense, 18 U.S.C. § 2155(a) ("Count One"), and willful injury or depredation of property of the United States in excess of $1,000, 18 U.S.C. § 1361 ("Count Two").[1] *See* R. 55. The case proceeded to trial. Many of the key facts at trial were undisputed or easily proved: the defendants illegally entered Y-12 and inflicted minor damage once inside. The clean-up costs totaled $8,531.67. R. 192 at 206. The government also proved that Y-12 closed for fifteen days following the break-in, so that the authorities could address the obvious gaps in security that the defendants' illegal entry had exposed. *Id.* at 75–76. Finally, the United States introduced recordings of phone calls that the defendants made from jail following their arrest. *Id.* at 230–32. On

---

[1] The United States also charged the defendants with destruction of property in violation of 18 U.S.C. § 1363, R. 55 at 1–2, but the United States dismissed that count before trial. *See* R. Doc. 133 at 2.

the calls, the defendants discussed why they broke into Y-12. *See* R. 235-1 at 3, 10.

At the close of the government's case-in-chief, the defendants moved pursuant to Federal Rule of Criminal Procedure 29 for a judgment of acquittal on both counts. *See* R. 192 at 240. The Court withheld judgment as to Count One, *id.* at 295, and denied the motion as to Count Two, *id.* at 275–76. The defense then presented its case, and each of the defendants testified. *See* R. 193 at 33, 44, 110. After the defense rested, the jury found the defendants guilty on both counts. R. 156. The defendants renewed their Rule 29 motion for acquittal as to Count One, R. 201, and they also moved for a new trial under Rule 33, R. 202. For the reasons that follow, the Court denies both motions.

## DISCUSSION

### I. The Rule 29 Motion

Federal Rule of Criminal Procedure 29 requires the Court to enter a judgment of acquittal if the evidence was insufficient to prove the offense charged. A defendant challenging the sufficiency of the evidence "bears a very heavy burden." *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010). The jury's verdict must stand if, viewing the evidence in the light most favorable to the United States, any rational jury could have found the defendants guilty. *United States v. White*, 932 F.2d 588, 589 (6th Cir. 1991).

What evidence the Court may consider when deciding a Rule 29 motion depends on when the motion was made. *See* Fed. R. Crim. P. 29(b). Here, the defendants made their motion for acquittal at the close of the government's case. R. 192 at 240. As authorized by Rule 29, *see* Fed. R. Crim. P. 29(b), the Court reserved judgment on the motion until after the trial. R. 192 at 295. When a court reserves judgment on a motion for acquittal, "it must decide the motion on the basis of the evidence at the time the ruling

was reserved." Fed. R. Crim. P. 29(b). So the Court may consider only the government's evidence when deciding the defendants' Rule 29 motion.

The defendants urge that acquittal is required for two reasons: (1) because no reasonable jury could have found that the defendants intended to interfere with the national defense of the United States, and (2) because the defendants' non-violent actions did not actually damage the national defense. The defendants' first argument fails because their own statements provide sufficient evidence of their intent, and the second argument ignores the text of 18 U.S.C. § 2155(a).

**A. The Defendants' Intent**

The defendants' main argument is that the government failed to prove the specific intent required by 18 U.S.C. § 2155(a). *See* R. 201 at 6. That section provides as follows: "Whoever, *with intent to injure, interfere with, or obstruct the national defense of the United States*, willfully injures . . . any . . . national-defense premises . . . shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 2155(a) (emphasis added). In this context, "national defense" is "a generic concept of broad connotations referring to the military and naval establishments and the related activities of national preparedness." *See United States v. Kabat*, 797 F.2d 580, 586 (8th Cir. 1986) (internal quotation marks omitted) (citing *Gorin v. United States*, 312 U.S. 19, 28 (1941)).

The defendants' state of mind is a question of fact, and the defendants' intent may be inferred from their acts, *see United States v. Gibson*, 896 F.2d 206, 209 (6th Cir. 1990), and their statements, *see United States v. Salgado*, 250 F.3d 438, 447–48 (6th Cir. 2001). So, when considering intent, the jury could have weighed both the defendants' actions on the morning of the break-in and the jailhouse calls the defendants made following their

4

arrest.

The Defendants' Actions: The United States argues that the defendants' unlawful intent can be inferred from the facts surrounding their trespass at Y-12. R. 216 at 9. The defendants used bolt-cutters to cut through four fences to access a facility that they knew stored enriched uranium. *See* R. 192 at 184. The fences displayed "No Trespassing" signs, and the signs stated that entering the facility was a federal crime. *See id.* at 72–73; Trial Ex. 46. Given the sensitive nature of Y-12, the argument goes, the defendants must have known that their trespass would disrupt operations at the base. So the government concludes that a jury reasonably could infer that the defendants intended the resulting disruption.

In support of this argument, the government points to *United States v. Platte*, 401 F.3d 1176 (10th Cir. 2005). *See* R. 216 at 3. In *Platte*, the Tenth Circuit affirmed a conviction under § 2155(a) on very similar facts. *See id.* at 1180–81. The government's argument in this case closely tracks the panel's reasoning in *Platte*: Since the defendants knew that they were entering a secure facility, they must also have known that their trespass "would elicit a vigorous response." *Id.* at 1180. And a disruption of operations at the base would "almost inevitably" follow from a breach of security. *Id.* at 1180–81. The panel therefore held that the jury could infer the required intent from the facts surrounding the break-in. *See id.*

But does merely knowing that one's actions will cause a disruption at a military base—even a particularly sensitive one that stores weaponized uranium—really permit the inference that one intended to interfere with the national defense? This Court is not so sure. Taken to its logical conclusion, the argument has some bizarre implications. For

5

example, could a jury draw the same inference of intent against a boy who—having read the warning signs—throws his football inside the facility, hoping that a guard will throw it back? Just like the defendants, the boy knows the sensitive nature of Y-12. And just like the defendants, his action is practically certain to distract the staff from their usual duties. The likely disruption would not be significant, but the statute contains no exception for minor disruptions, so the boy could find himself in hot water under *Platte*. The Court need not decide whether to follow *Platte*, however, because the government adduced stronger evidence of the defendants' intent.

<u>The Defendants' Phone Calls</u>: While in custody, the defendants made several phone calls. The jail recorded the calls, and the United States introduced the recordings at trial. On one call, Boertje-Obed stated that the defendants went to Y-12 to "oppos[e] nuclear weapons directly," that they wanted to take "direct action," and that they hoped a uranium processing facility under development at Y-12, *see* R. 192 at 131, would "not be built." R. 235-1 at 3. On another, Rice said that the defendants entered Y-12 to "begin the work of disarmament." *Id.* at 10.

Unlike the defendants' actions alone, the defendants' statements suggest that they acted for the particular purpose of frustrating certain operations at Y-12. Boertje-Obed's call implies that the defendants intended their "direct action" to prevent the construction of the uranium processing facility. Rice's statement about beginning the "the work of disarmament" is similarly damaging. In context, "the work of disarmament" could be understood to mean the work of disarming Y-12 by interfering with its mission to produce and store enriched uranium. The production and storage of enriched uranium are "activities of national preparedness," *see Gorin*, 312 U.S. at 28, because they are

6

necessary to the maintenance of an effective nuclear arsenal, *see* R. 192 at 46–48, 55. So the defendants' statements permit the inference that they intended to interfere with the national defense.

There may be other plausible readings of what the defendants meant. But so long as a reasonable jury, viewing the statements most favorably to the government, could conclude that the defendants are guilty, then the verdict must stand. *See United States v. Adamo*, 742 F.2d 927, 932 (6th Cir. 1984) ("It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt."). Viewed from the perspective required by Rule 29, the defendants' calls permit the required inference. Therefore, the defendants' first argument fails.

### B. Non-Violence and § 2155(a)

The defendants next argue that—whatever their intent—they did not harm the national defense of the United States, because they took only non-violent actions. This crabbed notion of "injury" has no basis in the statutory text. The defendants violated § 2155(a) if, with the required intent, they "injur[ed] . . . or attempt[ed] to so injure . . . any . . . national-defense premises." 18 U.S.C. § 2155(a). The term "national-defense premises" means "all buildings . . . or other places wherein . . . national-defense material is being produced, manufactured, [or] stored." *Id.* § 2151. Y-12 fits comfortably within that definition, since the Complex produces and stores nuclear weapons components, *see* R. 192 at 46–48, 55. Nor is there any doubt that the defendants injured Y-12 to the tune of $8,531.67. *Id.* at 206. There was thus ample evidence from which a jury could conclude that the defendants injured a national-defense premises.

But what about the fact of the defendants' nonviolence—does it make sense to deal

7
Case 3:12-cr-00107-ART-CCS   Document 239   Filed 10/01/13   Page 7 of 14   PageID #: 2379

as harshly with non-violent protesters as with foreign saboteurs? The Constitution leaves that judgment to the policymaking branches, so the Court must interpret this criminal statute by its terms. *See Brogan v. United States*, 522 U.S. 398, 406–07 (1998) (criminal statutes must be "read as broadly as they are written"). The Court cannot fashion "case-by-case exceptions" for sympathetic defendants. *Id.* at 406.

The defendants' non-violence thus does not affect the question facing the Court today: whether a reasonable jury could find the defendants guilty. Of course, the defendants' non-violence will be relevant at sentencing, since the Court must account for both the "nature and circumstances of the offense and the history and characteristics" of the defendants. *See* 18 U.S.C. § 3553(a)(1). Given the obvious differences between the defendants and the paradigmatic saboteur, those factors surely will be worthy of discussion. But because those differences do not lessen the defendants' liability under § 2155(a), the Court denies the defendants' Rule 29 motion.

**II.     The Rule 33 Motion**

Federal Rule of Criminal Procedure 33 permits a district court to vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Although the phrase "interest of justice" is murky and undefined, *see United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010), the Court has the authority to grant a new trial in at least two circumstances. The first is when the manifest weight of the evidence does not support the jury's verdict. *See id.* The second is when a serious legal error infected the trial. *See id.* The defendants argue that a new trial is required because: (1) there was insufficient evidence of intent, (2) the defendants acted pursuant to sincerely held moral beliefs, and (3) the prosecutor engaged in misconduct during closing argument. R. 202

8

at 1.

   A. **The Weight of the Evidence**

When a "jury's verdict was against the manifest weight of the evidence," Rule 33 authorizes the Court to grant a new trial. *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007). As the word "manifest" suggests, the lack of an evidentiary basis for the verdict must be obvious, not merely arguable. *See id.* at 592–93; *cf. Tenn. Prot. & Advocacy, Inc. v. Wells*, 371 F.3d 342, 348 (6th Cir. 2004) (defining "manifest"). A new trial should be granted only in "the extraordinary circumstance" where the evidence weighs heavily against the verdict. *Hughes*, 505 F.3d at 593 (internal quotation marks omitted). The defendant bears the burden of showing that his case is extraordinary. *United States v. Turner*, 995 F.2d 1357, 1364 (6th Cir. 1993).

The defendants' Rule 33 weight-of-the-evidence challenge mirrors their Rule 29 challenge. The defendants argue that the government did not prove that they intended "to injure, interfere with, or obstruct the national defense of the United States." 18 U.S.C. § 2155(a). The problem for the defendants is that their own testimony undermines their argument. Because the defendants made their motion for acquittal at the close of the government's case, the Court could consider only the government's evidence when evaluating the Rule 29 motion. *See* Fed. R. Crim P. 29(b). But the Court may consider all of the evidence when deciding the Rule 33 motion, including the defendants' testimony during the defense presentation.

The defendants' testimony confirmed what their phone calls suggested—that the defendants intended to interfere with Y-12's ability to produce and store nuclear weapons components. Walli testified that nuclear weapons are "terroristic," that the activities of Y-

9

12 are "terroristic and criminal," and that he wanted such "criminal activities" to "cease immediately." R. 193 at 63–64. Boertje-Obed stated that he "expected there would be a response" to the break-in and that the defendants "wanted a transformation response." *Id.* at 122. When pressed to explain what he meant, Boertje-Obed clarified that a "transformation response" meant stopping nuclear weapons production. *Id.* at 123. Only Rice testified that she did not intend to disrupt operations at Y-12. *Id.* at 33. But that comment is hard to square with her recorded statement that she sought to begin "the work of disarmament." R. 235-1 at 10. Therefore, in light of the defendants' own testimony as well as the government's evidence, the jury's verdict was not against the manifest weight of the evidence.

### B. The Defendants' Moral Views

The defendants next seek shelter in a too-literal reading of Rule 33, one that would allow a district court to nullify any jury verdict that it views as morally unjust. The defendants insist that they sincerely believed their actions were necessary to ensuring human survival. And, the defendants say, they helped the nation by exposing security flaws in the Y-12 Complex.

The defendants provide no authority for the proposition that a court can order a new trial because the Court sympathizes with the defendants or believes that their crime had positive consequences. Rule 33 is limited to legal unfairness, not unfairness in any other sense. Even cases that test the outer reaches of the "interest of justice" language in Rule 33 still tether the inquiry to a legal error. *See Munoz*, 605 F.3d at 374 (suggesting that Rule 33 might "permit the grant of a new trial on the basis of perceived unfairness of less than reversible magnitude," such as errors by counsel that do not meet the standard

10

for ineffective assistance of counsel). In the world the defendants imagine, Rule 33 vests judges with the super-majoritarian power to cast aside criminal laws that run afoul of their moral convictions. In this world, however, the people's elected representatives are charged with crafting the criminal laws, and judges are tasked only with interpreting them. Absent a legal error, or a failure of proof, the Court lacks the authority to grant the defendants a new trial.

### C. Prosecutorial Misconduct

Finally, the defendants argue that they deserve a new trial because the prosecutor improperly referred to the terrorist attacks of September 11, 2001, during closing argument. When faced with a claim of prosecutorial misconduct, a district court conducts a two-step inquiry. First, the Court must determine whether "the prosecutor's statements were improper." *United States v. Cobleigh*, 75 F.3d 242, 247 (6th Cir. 1996). If so, the Court must then decide if the impropriety was flagrant by considering whether: (1) the remarks misled the jury or prejudiced the defendants, (2) the remarks were isolated or extensive, (3) the remarks were deliberate or accidental, and (4) the evidence against the defendants was strong or weak. *Id.*

The prosecutor referred to the September 11 attacks to rebut one of the defendants' arguments. The defendants repeatedly attempted to demonstrate that Y-12's security was dangerously inadequate before their break-in. At various points, the defendants suggested that their actions were commendable, because Y-12's defenses were strengthened in response to their break-in. During closing arguments, the prosecutor responded by drawing an analogy to September 11. He twice noted that he was not comparing the defendants to terrorists:

> If you ever had a flight after 9/11, you know how much tighter security got. And that may be a good thing. It certainly is a good thing. Does that mean 9/11 was a good thing? Of course not. *I'm certainly not trying to say that the defendants are terrorists or anything like that.* I'm just making comparisons. Just because their security was increased, that doesn't mean what they did was good, and that doesn't mean they should get a pass on it. They're not above the law. . . . *Again, we're not saying they're terrorists or anything like that.*

R. 193 at 186–87 (emphasis added).

After the jury left the courtroom to deliberate, the defendants moved for dismissal or for a mistrial. The defendants explained that "We got through an entire trial without any use of the word terror or terrorism, and then counsel in his concluding argument used 9/11, implying a comparison . . . ." *Id.* at 194; *see also id.* at 195 ("[J]ust the use of 9/11 is, to me, prosecutorial misconduct. It's a horrible crime."). The Court denied the motion for two reasons. First, the prosecutor had explained that he was not accusing the defendants of being terrorists. *Id.* at 194–95. And second, the defendants themselves had brought up terrorism many times during the trial. *Id.* at 195.

The defendants' Rule 33 motion does not provide any reason to reconsider the Court's denial of their initial motion. Indeed, the defendants offer no argument in support of their claim that the statements were improper. But even assuming the prosecutor's remarks were improper, they were not flagrant. The remarks did not mislead the jury, as the prosecutor used a clear analogy to show that illegal actions can lead to positive changes. He twice stated that he was not comparing the defendants to terrorists. Nor did the remarks prejudice the defendants. The defendants themselves brought up the specter of terrorism, insisting repeatedly that the United States engages in terroristic activity at Y-12. *See* R. 192 at 33 (nuclear weapons "are designed to terrorize and kill civilians"); R.

193 at 48 (describing Y-12 as a "U.S. government criminal terrorist site"), 58 ("preparations for killing and taking human life, they're all illegal, whether the U.S. government does it, whether Al Qaeda does it"), 63 ("[t]he nuclear weapons produced [at Y-12] . . . are terroristic and criminal by their very nature"), 70 ("I oppose all terroristic elements, the U.S. government and Al Qaeda one at the same time"), 75 ("here goes this terroristic rogue, United States government, off again on another criminal war resulting in death"). The defendants even said that they were concerned they might run into Al Qaeda members at the Y-12 Complex. *See* R. 193 at 55–56, 70. And finally, the prosecutor's remarks were isolated. He referred to September 11 only once, and only in response to the defendants' closing statements. There was thus no prosecutorial misconduct that requires a new trial.[2]

## CONCLUSION

The defendants are entitled to their views regarding the morality of nuclear weapons. But the defendants' sincerely held moral beliefs are not a get-out-of-jail-free card that they can deploy to escape criminal liability. Because the defendants' actions violated the plain meaning of 18 U.S.C. § 2155(a), their convictions must stand.

Accordingly, it is **ORDERED** that:

(1) The defendants' Rule 29 motion, R. 201, is **DENIED**.

---

[2] The defendants also object to the prosecution's reference to "burglary" during closing argument. R. 202 at 7–8. The defendants did not preserve this claim, but the claim would fail even if they had. The prosecutor twice referred to burglary to illustrate the same point he made with his September 11 analogy. R. 193 at 152, 186. He also said that the defendants carried "burglary tools" during the break-in. *Id.* at 184. The defendants again offer no reason to believe that the references to burglary were improper. And there is similarly no reason to think that the references misled the jury or prejudiced the defendants. The prosecutor's references to burglary were nearly as isolated and infrequent as his single reference to September 11. So this alternative prosecutorial misconduct claim also fails.

(2) The defendants' Rule 33 motion, R. 202, is **DENIED**.

(3) The defendants' motion for leave to file a supplement brief, R. 237, is **GRANTED**.

This the 1st day of October, 2013.

Signed By:
*Amul R. Thapar* AT
United States District Judge